# United States Court of Appeals
## for the Fifth Circuit

## Case No. 25-11370

Conghua Yan,
Plaintiff - Appellant
v.
William A. Pigg, in Individual Capacity, as Member of the State of Texas,
Defendant - Appellee

## consolidated with

## No. 26-10286

Conghua Yan,
Plaintiff - Appellant
v.
The State Bar of Texas, a private company; The Barrows Firm, a private company;
Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas;
William Albert Pigg, in Individual Capacity, as Member of the State of Texas;
Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis
Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official
Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio
Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official
Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann
Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official
Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L.
DeAngelis, in Individual Capacity, as member of the State Bar of Texas and Official
Capacity as Associate Judge; U.S. Bank,
Defendants - Appellees

## Citation of Supplemental Authority Under Fed. R. App. P. 28(j)

July 12, 2026

Dear Clerk:

Pursuant to Federal Rule of Appellate Procedure 28(j), Appellant submits *Warner v. Espitia*, No. S25G1354, slip op. (Ga. June 30, 2026)[1], issued **after** Appellant filed his opening brief.

*Warner* is pertinent to Opening Brief pages 57–60 and 84–89, which argue that the district court could not replace the pleaded § 664 employee-benefit-plan predicate with a generalized domestic-relations or money-laundering characterization.

The Georgia Supreme Court held that the Georgia RICO Act "**does not exclude from its reach individuals who have engaged in racketeering activity within the context of a 'domestic dispute**.'" Slip op. at 2. It further explained that the court below "**conducted no meaningful analysis of Warner's particular RICO claim**" and relied only on the domestic setting. *Id.* at 8 n.6.

Addressing federal RICO authority, *Warner* explained that the cited **federal decisions** "**do not stand for the proposition that domestic cases are categorically excluded from the federal RICO Act.**" *Id.* at 14. Those decisions rejected particular complaints only after analyzing whether they sufficiently pleaded the governing RICO elements under Rule 12(b)(6). *Id.* at 14–15. *Warner* also emphasized that "**a statute draws its meaning from its text,**" **not** from **a court's preferred policy outcome**. *Id.* at 14.

Although *Warner* construes Georgia RICO and therefore is persuasive rather than controlling, its analysis of federal RICO authority supports Appellant's preserved argument that domestic-relations context cannot replace § 1962 claim-specific analysis of the pleaded predicates and elements. The district court could not substitute a generalized domestic-relations or money-laundering characterization for the pleaded § 664 employee-benefit-plan predicate and then dismiss the substituted theory.

---

[1] https://www.gasupreme.us/wp-content/uploads/2026/06/s25g1354.pdf

The slip opinion is attached.

Respectfully submitted,

*Conghua Yan* /s/ Conghua Yan
Conghua Yan
Pro Se Appellant
2140 E. Southlake Blvd., Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

**Certificate of Service**

I certify that on July 12, 2026, I served a copy of this Rule 28(j) letter on all counsel of record and parties through the Court's CM/ECF system or by other means required by Fed. R. App. P. 25.

/s/ Conghua Yan

**Certificate of Compliance**

I certify that the body of this Rule 28(j) letter contains 269 words, excluding the caption, signature block, and certificates.

/s/ Conghua Yan

NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S25G1354
Jennifer Warner
v.
Jeffrey Espitia et al.

On Writ of Certiorari from the Court of Appeals
No. A25A0095

Argued: May 5, 2026 — Decided: June 30, 2026

WARREN, Presiding Justice.

In June 2023, Jeffrey Espitia filed a petition for contempt in Cobb County Superior Court, alleging that his ex-wife Jennifer Warner, with whom he has two children, was in arrears in her child support payments. Espitia also filed notices with the Georgia Department of Human Services ("DHS") claiming that Warner was in arrears. The Cobb County court ultimately determined that Warner's child support payments were paid in full, such that she was not in contempt, and that Espitia's petition was "frivolous." Warner then filed in Paulding County Superior Court a complaint against Espitia and his fiancée, Krystal Kriewaldt, alleging, among other things, that they conspired with each other to file the false petition and DHS notices, which constituted a civil violation of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to OCGA § 16-14-1 et seq. Espitia and Kriewaldt filed a motion to dismiss, which the Paulding County trial court granted, and Warner appealed. The Court of Appeals affirmed in *Warner v. Espitia*, 375 Ga. App. 806 (2025), concluding that it would be "unreasonable or absurd" to extend

the Georgia RICO Act "to any garden-variety domestic dispute." Id. at 814 (quotation marks omitted). We granted Warner's petition for certiorari to determine whether that holding was correct.

As explained below, an analysis of the text and surrounding context of the Georgia RICO Act shows that the Act does not exclude from its reach individuals who have engaged in racketeering activity within the context of a "domestic dispute." Because this is the only plausible construction of the plain language of the Act, the Court of Appeals should not have gone on to consider whether such a construction would produce results that, in the court's view, were "unreasonable or absurd." We therefore vacate the Court of Appeals's opinion and remand the case for the court to consider the parties' remaining arguments as to whether the trial court properly dismissed Warner's complaint.

1. *Factual Background*

As summarized by the Court of Appeals:

[T]he record demonstrates that Warner and Espitia divorced in 2009 and that the couple's two children resided with Espitia and his fiancée, Kriewaldt. A January 2023 child support consent order, entered by the Superior Court of Cobb County (the "Cobb County court"), required Warner to pay, initially, $450 per month to Espitia with an increase to $550 per month in November 2023. The child support order also noted that Warner was in arrears in the amount of $7,500 as of July 1, 2022, and that she was required to pay Espitia an additional $100 per month until the arrearage was satisfied in full.

In June 2023, Espitia, with Kriewaldt's assistance, filed a petition for contempt in the Cobb

County court, alleging that Warner was in arrears in the amount of $11,774.58. [Around the same time, Espitia filed a notice with DHS claiming that Warner was in arrears; he filed another DHS notice in October 2023.[1]] At an October 25, 2023 hearing on Espitia's petition for contempt, Espitia admitted that he was "ignorant" as to whether Warner was in arrears or the amount she was in arrears, but added that he did not "intentionally false[ly] swear" because he "truly believed" Kriewaldt's calculation of the alleged arrearage and mistakenly thought that other expenses, in addition to child support, were in arrears. As a result, Espitia characterized the filings as "100 percent a mistake."

After the hearing, the Cobb County court entered an order that declined to hold Warner in contempt and, instead, awarded attorney fees to Warner against Espitia. As part of its order, the Cobb County court concluded that Espitia's contempt petition had "such a complete absence of any justiciable issue of law or fact … that it could not reasonably be believed that a court would find [Warner] in contempt…." The Cobb County court further found that

> the claims in [Espitia's] Petition were substantially frivolous, substantially groundless, and substantially vexatious. The [c]ourt [found] that the evidence showed the instant

---

[1] The record does not indicate how the DHS notices were ultimately resolved.

3

case was initiated with the intention to harass and intimidate [Warner]. [Espitia] testified under oath that he did not know the disputed child support payments, which had been adjudicated by [a] prior Consent Final Order, were res judicata. He further testified that [Kriewaldt] calculated the alleged arrearages in the Petition. The [c]ourt [did] not find these arguments credible or persuasive if true.

Thereafter, armed with the Cobb County court's order, Warner filed the present complaint alleging causes of action for filing false documents, violations of the Georgia RICO Act, punitive damages, and attorney fees.[2] The defendants moved to dismiss Warner's complaint, arguing that Warner's claim was barred by res judicata and because: (1) it vio-

---

[2] Specifically, the complaint, which was filed in December 2023, alleged that Espitia and Kriewaldt violated OCGA § 16-10-20.1 by filing false documents and violated OCGA § 16-14-4(c) of the Georgia RICO Act by conspiring with each other and endeavoring to violate OCGA § 16-14-4(a)—which provides, in pertinent part, that it is "unlawful for any person, through a pattern of racketeering activity…, to acquire or maintain, directly or indirectly, any interest in or control of any … personal property of any nature, including money." The complaint sought compensatory damages for mental anguish and injuries to peace, happiness, or feelings under OCGA § 51-12-6, treble damages for racketeering activity pursuant to OCGA § 16-14-6(c), litigation expenses, attorney fees, and punitive damages. In March 2024, Warner amended the complaint to add claims that Espitia and Kriewaldt filed false statements and writings in violation of OCGA § 16-10-20 and conspired to file false documents in violation of OCGA § 16-10-20.1.

lated the RICO Act's purpose and codified public policy; (2) Warner did not incur any damages; and (3) Warner's true cause of action, if any, was for abusive litigation, and she failed to satisfy the statutory prerequisites to maintain such an action.

Following a hearing, the trial court granted the defendants' motion to dismiss. Specifically, the trial court found that the predicate acts underlying Warner's RICO claim—filing of false statements and writings (OCGA § 16-10-20) and filing false documents (OCGA § 16-10-20.1)—were "specific intent crimes and require that a person *knowingly* and *willfully* file documents and that the person *knows* the documents contain false statements of material fact." (Emphasis in original.)[3] The court further concluded that the pleadings from the Cobb County

---

[3] OCGA § 16-10-20 says:

 A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

OCGA § 16-10-20.1 says, in pertinent part, that it is a felony to "[k]nowingly file, enter, or record any document in a public record or court of this state or of the United States knowing or having reason to know that such document is false or contains a materially false, fictitious, or fraudulent statement or representation."

action demonstrated only that Espitia "filed what he believed to be true and accurate documents with correct information at the time he filed the documents[,]" such that "there could not be any fact introduced to establish that [the defendants] knowingly made and filed false documents, writings, or statements." As a result, the trial court concluded that, despite the Cobb County court's finding that Espitia's arguments were not "credible or persuasive if true[,]" the predicate acts had not been shown and that Warner's RICO action failed. The trial court added that the RICO Act, "while liberally construed, was not intended for use in civil matters of this scope."

*Warner*, 375 Ga. App. at 807–08 (footnotes omitted).

Warner appealed, and the Court of Appeals affirmed. See *Warner*, 375 Ga. App. at 814. Although the Court of Appeals acknowledged that "Warner's complaint identifie[d] two false statement statutes—codified at OCGA §§ 16-10-20 and 16-10-20.1—as the predicate acts which, if proven, would constitute two of the enumerated predicate acts under the Georgia RICO Act," the court determined that the complaint was "in actuality, … yet another volley in the parties' long-running domestic dispute." *Warner*, 375 Ga. App. at 813. The Court of Appeals then stated that "[f]ederal courts routinely reject RICO claims within the context of domestic disputes" and that "nothing in the plain language of the Georgia RICO Act" suggests "that the Act may be warped so far beyond its original purpose of combating organized crime to apply to a festering domestic feud." Id. at 813–14. Concluding that "extending the Georgia RICO Act to any garden-variety do-

6

mestic dispute would lead to unreasonable or absurd conse-
quences not contemplated by the legislature[,] in defiance of com-
mon sense and sound reasoning," the Court of Appeals held that
the trial court properly dismissed Warner's complaint for failure
to state a claim under OCGA § 9-11-12(b)(6). *Warner*, 375 Ga.
App. at 814 (quotation marks omitted).[4]

Warner timely filed a petition for certiorari, arguing,
among other things, that the Court of Appeals erred by conclud-
ing that her complaint exceeded the scope of the Georgia RICO
Act. We granted the petition.[5]

2. *Analysis*

We begin with the well-settled standard of review that ap-
plies to a motion to dismiss for failure to state a claim upon which
relief can be granted. Such a motion

> should not be sustained unless (1) the allegations of
> the complaint disclose with certainty that the claim-
> ant would not be entitled to relief under any state of
> provable facts asserted in support thereof; and (2)
> the movant establishes that the claimant could not

---

[4] The Court of Appeals expressly declined to address Warner's argu-
ment that the trial court incorrectly determined that she could not demon-
strate that Espitia and Kriewaldt committed the predicate acts underlying the
RICO claim—violating OCGA §§ 16-10-20 and 16-10-20.1—because they did
not possess the requisite intent. See *Warner*, 375 Ga. App. at 814–15. The
court also declined to decide "where a line separates what claims are permis-
sible under the Georgia RICO Act and what claims are not," noting, "we simply
state that Warner's Georgia RICO Act claim is not permitted under the cir-
cumstances presented here." Id. at 814 n.8. Finally, the court expressly did
not decide whether the compensatory damages Warner sought for injuries to
her peace, happiness, or feelings under OCGA § 51-12-6 are "even available
under a Georgia RICO Act claim." Id.

[5] The case was orally argued on May 5, 2026.

> possibly introduce evidence within the framework of
> the complaint sufficient to warrant a grant of the re-
> lief sought.

*Williams v. DeKalb County*, 308 Ga. 265, 270 (2020) (quotation marks omitted).  See also OCGA § 9-11-12(b)(6).  An appellate court reviews a trial court's ruling on a defendant's motion to dismiss de novo, "accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff." *Williams*, 308 Ga. at 270 (cleaned up).

Here, the Court of Appeals concluded that Warner could not be entitled to relief under any state of provable facts asserted in support of her claim that Espitia and Kriewaldt violated OCGA § 16-14-4(c) by conspiring and endeavoring to acquire her money through a pattern of racketeering activity under OCGA § 16-14-4(a), such that the complaint failed to state a claim upon which relief could be granted, on the basis that the Georgia RICO Act does not "extend[ ]" to a "garden-variety domestic dispute." *Warner*, 375 Ga. App. at 814.  To determine whether that conclusion was correct, we center our analysis on whether an alleged pattern of racketeering activity that occurs in the context of a "domestic dispute" is categorically excluded from the scope of the Georgia RICO Act.[6]  We therefore turn to the statutory construction of the Act.

---

[6] Pointing to the Court of Appeals's statement in a footnote that "Warner's Georgia RICO Act claim is not permitted under the circumstances presented here," *Warner*, 375 Ga. App. at 814 n.8, Espitia and Kriewaldt argue that the Court of Appeals's holding was not categorical.  But the Court of Appeals conducted no meaningful analysis of Warner's particular RICO claim, and the only circumstance the court considered in reaching its conclusion was that the complaint arose in the course of a "long-running domestic dispute,"

(a) *An Analysis of the Text and Context of the Georgia RICO Act Does Not Support the Court of Appeals's Conclusion.*

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (2013) (quotation marks omitted). "To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172–73 (cleaned up).

The text of the Georgia RICO Act, which was first enacted in 1980 and has been amended several times since, has never contained language that expressly limits its application to particular sorts of "disputes"—much less language that expressly excludes from its reach individuals who have engaged in racketeering activity within the context of a "domestic dispute." See, e.g., Ga. L. 1980 at 405; Ga. L. 1982 at 1385; Ga. L. 1984 at 22; Ga. L. 1997 at 672; Ga. L. 2015 at 693. Indeed, as discussed more below, the text of the Act indicates that it applies to anyone who violates its terms through the commission of acts involving any crime in a long and varied list of criminal offenses.

To begin, the plain language of OCGA § 16-14-4 makes clear that the activities prohibited by the Georgia RICO Act apply to "any person." In this respect, OCGA § 16-14-4(a) provides that it is unlawful for "any person, through a pattern of racketeering

---

before it pronounced that "extending the Georgia RICO Act to any garden-variety domestic dispute" would be "unreasonable or absurd." Id. at 813–14 (quotation marks omitted).

activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4(b) makes it unlawful for "any person" who is "employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." And OCGA § 16-14-4(c) prohibits "any person" from conspiring or endeavoring to violate OCGA § 16-14-4(a) or (b).[7]

In addition, the Georgia RICO Act broadly defines "'[p]attern of racketeering activity'" as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents …" or "[e]ngaging in any one or more acts of domestic terrorism as described in Code Section 16-11-221 or any criminal attempt, criminal solicitation, or criminal conspiracy related thereto." OCGA § 16-14-3(4). In turn, the Act provides that "'[r]acketeering activity' means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the laws of this state involving" a crime in any of 43 enumerated categories of criminal offenses, OCGA § 16-14-3(5)(A), as well as certain acts that violate federal law, see OCGA     § 16-14-3(5)(B) &

---

[7] As discussed above, Warner alleged in her complaint that Espitia and Kriewaldt violated OCGA § 16-14-4(c) by conspiring and endeavoring to violate OCGA § 16-14-4(a); Warner alleged no claims under OCGA § 16-14-4(b), so she was not required to allege that Espitia and Kriewaldt were employed by or associated with an enterprise.

(C).[8]  In short, nothing in the text of the provisions defining the elements of a RICO offense suggests that the offense cannot arise from a defendant's criminal acts in the course of a "domestic dispute."

The provision of the Georgia RICO Act that allows for civil remedies similarly contains no indication that such remedies are not available when the civil claim alleges that a defendant has engaged in racketeering activity in the context of a "domestic dispute." See OCGA § 16-14-6.  Indeed, subsection (b) of OCGA § 16-14-6 says that "[a]ny aggrieved person or the state may institute" a civil RICO action, and subsection (c) provides that "[a]ny person who is injured" by "any violation of" OCGA § 16-14-4 shall have a cause of action for treble damages, among other things.

Moreover, the Georgia RICO Act explicitly sets forth the General Assembly's intent to combat "the increasing sophistication of various criminal elements and the increasing extent to which the state and its citizens are harmed as a result of the activities of these elements"; to impose sanctions "against those who violate" the Act; and "to provide compensation to persons injured or aggrieved by such violations."  OCGA § 16-14-2(a) & (b).  The General Assembly intended that the Act "apply to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury" and "shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions."  OCGA § 16-14-2(b).  This provision also explains: "It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct or acts of civil

---

[8] Included in the 43 categories of criminal offenses are the felonies alleged in Warner's complaint—"[f]alse statements and writings or false lien statements against public officers or public employees in violation of Code Section 16-10-20 or 16-10-20.1."  OCGA § 16-14-3(5)(A)(xxii).

disobedience be prosecuted" under the Georgia RICO Act. Id. Although this codification of the legislature's intent suggests that the Act generally is meant to counter sophisticated criminal schemes, nothing in this provision suggests that such schemes cannot be carried out in the context of a "domestic dispute." See *Grogan v. City of Dawsonville*, 305 Ga. 79, 88 (2019) (explaining that codified language approved by the General Assembly, including codified preambles and captions, is "part of the act enacted by the General Assembly and is, therefore, appropriate to consider when determining the meaning of the statute").

In sum, the broadly applicable text of the Georgia RICO Act to "any person" who engages in a pattern of racketeering activity by committing acts involving any crime in a varied list of predicate offenses, combined with the fact that the text of the Act does not expressly exclude racketeering activity arising from a "domestic dispute," strongly supports that no such categorical exclusion exists. See, e.g., *Clark v. State*, 321 Ga. 35, 43–44 (2025) (holding that because nothing in the text of a statute provided a remedy for the failure to comply with the statute, the statute did not automatically entitle the defendant to the remedy he sought); *McKinney v. State*, 318 Ga. 566, 569–70 (2024) (concluding that a criminal statute did not contain a certain requirement, partly because the text of the statute contained no such requirement).

Statutory context also supports this conclusion. Indeed, the legislature has expressly carved out limitations on criminal and civil liability in other provisions of the Criminal Code, but it included no such limitations in the Georgia RICO Act. See, e.g., OCGA §§ 16-5-103 (providing that a violation of the Protection of Elder Persons Act "shall not give rise" to a civil Georgia RICO claim "against a long-term care facility or any owner, officer, em-

12

ployee, operator, or manager of such facility"); 16-9-107 (providing that there "shall be no cause of action" for initiation of deceptive commercial e-mail against an e-mail service provider under certain circumstances); 16-9-156 (limiting criminal and civil liability under the Georgia Computer Security Act for employers, manufacturers or retailers of computer equipment, and others under certain circumstances); 16-15-7(c) (providing that "[a]ny person who is injured by reason of criminal gang activity shall have a cause of action" for treble damages, but "no cause of action shall arise under this subsection as a result of an otherwise legitimate commercial transaction between parties to a contract or agreement for the sale of lawful goods or property or the sale of securities"). See also, e.g., *Dates v. City of Atlanta*, 321 Ga. 696, 698–99 (2025) (explaining that the absence of language addressing whether a tolling provision applied in the statute at issue, considered in context with the presence of such language in another statute within the same title of the Georgia Code, supported a conclusion that a tolling provision did not apply to the statute at issue). Thus, the text and surrounding context of the Georgia RICO Act afford no basis for the Court of Appeals's conclusion that the Act cannot "extend[ ] to a "domestic dispute."

(b) *Nothing in the Court of Appeals's Analysis Affords a Basis to Depart from the Statutory Text.*

The Court of Appeals's opinion in this case did not engage in the sort of analysis of the Georgia RICO Act's text that we conducted above. Rather, the court quoted various provisions of the Act; noted that "[f]ederal courts routinely reject RICO claims within the context of domestic disputes" and that this lawsuit did not comport with the Georgia RICO Act's "original purpose of combatting organized crime"; and then concluded that Warner's complaint failed to state a claim upon which relief can be granted

13

on the basis that "extending" the Georgia RICO Act to a "garden-variety domestic dispute would lead to unreasonable or absurd consequences." *Warner*, 375 Ga. App. at 813–14 (quotation marks omitted). That conclusion was flawed for several reasons.

To begin, "a statute draws its meaning from its text." *Clark*, 321 Ga. at 40 (quotation marks omitted). That statutory construction centers on an analysis of the statute's text, "rather than whatever policy goal we imagine the statute to have been intended to serve." *State v. Phillips*, 323 Ga. 125, 129 (2025). See also, e.g., *State v. Greathouse*, 323 Ga. 99, 101–02 (2025); *Deal*, 294 Ga. at 172–73. Although the Court of Appeals set out this principle of statutory construction at the outset of its opinion, it did not engage in any meaningful analysis of the text of the Georgia RICO Act. See *Warner*, 375 Ga. App. at 809–13.

Next, although we have held that federal authority may be persuasive in interpreting the Georgia RICO Act, see *Williams General Corporation v. Stone*, 279 Ga. 428, 430 (2005), the federal RICO cases on which the Court of Appeals relied do not stand for the proposition that domestic cases are categorically excluded from the federal RICO Act. Instead, the federal cases that the Court of Appeals cited noted that the fact patterns of most domestic cases are not the sort of fact patterns that typically support a federal RICO claim and then, after conducting an analysis as to whether the plaintiffs sufficiently pled such a claim under Federal Rule of Civil Procedure 12(b)(6), held that the claim was not sufficient. See *Cohen v. Cohen*, 993 FSupp2d 414, 423 (2014) (noting that "domestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce" and then analyzing at length whether the plaintiff had standing to bring her RICO claims and whether she sufficiently pled the claims before deter-

14

mining that she had failed to adequately plead a pattern of racketeering activity under Federal Rule 12(b)(6)); *Bachi-Reffitt v. Reffitt*, 802 FApp'x 913, 916–17 (6th Cir. 2020) (noting that the court "found an almost unanimous belief among the courts presented with RICO claims like this one that concealment of assets by a husband from a wife is reprehensible and may be a crime under certain circumstances[,] but that does not render it a pattern of racketeering activity perpetuated through an enterprise for purposes of RICO" and collecting cases; then after analysis, concluding that the plaintiff did not sufficiently plead a pattern of racketeering activity under Federal Rule 12(b)(6) (cleaned up)); *Pataro v. Castellon*, No. 22-20866-CV-WILLIAMS, 2023 WL 9228315 at *4 (S.D. Fla., Nov. 14, 2023) (noting that "the sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO" and then after analysis, concluding that the plaintiff had failed to state a RICO claim under Federal Rule 12(b)(6) because she had not sufficiently alleged continued criminal activity, as required under the federal RICO Act to show a pattern of racketeering activity (quotation marks omitted)). As a result, those cases do not support the Court of Appeals's conclusion that "domestic dispute[s]" are categorically excluded from the Georgia RICO Act.

The Court of Appeals's reliance on the Georgia RICO Act's "original purpose of combatting organized crime" was similarly misplaced. *Warner*, 375 Ga. App. at 814. Although the first version of OCGA § 16-14-2 enacted in 1980 contained language referring to the General Assembly's intent to combat "the increasing organization among certain criminal elements" and "to impose sanctions against th[e] subversion of the economy by organized criminal elements," Ga. L. 1980 at 406, the legislature amended the statute in 1997, see Ga. L. 1997 at 672. That amendment removed the phrases the Court of Appeals referenced in its

opinion and replaced them with the phrases "the increasing sophistication of various criminal elements" and "to impose sanctions against those who violate this chapter." Ga. L. 1997 at 672. And as discussed above, that language remains in force today. See OCGA § 16-14-2. This change in statutory text signals the General Assembly's intent that the Georgia RICO Act encompass not only organized crime, but also a more expansive range of "sophisticated" criminal activity. See *Chestnut Ridge, LLC v. Hall County Bd. of Tax Assessors*, 323 Ga. 150, 154 (2025) ("When the General Assembly changes the language of a statute, that typically signals an intent to change the meaning of the statute." (cleaned up)).[9]

Finally, the Court of Appeals erred in reaching an absurdity analysis and predicating its legal conclusion on it. See *Warner*, 375 Ga. App. at 814. We have explained that courts "may construe statutes to avoid absurd results," *Riley v. State*, 305 Ga. 163, 168 (2019), but that construction must flow from an analysis of the statutory text. The "absurdity doctrine"—one of many canons of construction courts might apply in construing statutory text—is available as a tool of construction only when an analysis of the text of a statute indicates that there is more than one plausible interpretation as to the meaning of the text. That is to say, when a court considers statutory text—using other tools of statutory construction to determine what the text might mean—and concludes that its textual analysis yields competing constructions of nearly equivalent plausibility, and one such construction produces absurd results while the other does not, the court generally

---

[9] The Court of Appeals's opinion in this case relied on the text of the first version of OCGA § 16-14-2, as well as a 1986 case from this Court quoting that early statute; the Court of Appeals then quoted the current language of OCGA § 16-14-2, without addressing the change in the statutory text. See *Warner*, 375 Ga. App. at 812–13.

should choose the one that does not. Cf., e.g., *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 316 Ga. 701, 713 n.12 (2023) ("Because there is no ambiguity in the language, we do not need to resort to other canons of statutory construction, such as the absurdity doctrine[.]"); *Riley*, 305 Ga. at 168–70 (in analyzing the text of a statute, explaining that "affording the statutory language its ordinary meaning c[ould] yield multiple understandings," determining that one understanding would eliminate any useful meaning of the applicable statute of limitations, and accordingly adopting the other construction).

A court cannot, however, forgo an analysis of the statute's text and instead skip straight to the absurdity doctrine to determine the meaning of statutory text. Indeed, "the fact that an application of clear statutory text produces results that a litigant or others[, or a court, for that matter,] may think are unfair or unreasonable does not render the statute nonsensical or absurd." *McKinney*, 318 Ga. at 571 (cleaned up). Simply put, under our system of separation of powers, courts "do not have the authority to rewrite statutes, so when the text is plain, we must follow it." Id. (cleaned up).

Here, because a textual analysis of the Act yields only one plausible construction—and that construction plainly does not exclude from the Act's reach individuals who have engaged in racketeering activity within the context of a "domestic dispute"—the Court of Appeals should not have invoked the absurdity doctrine. See *McKinney*, 318 Ga. at 571 (rejecting the appellant's argument that the statute at issue should be construed to avoid absurd results where the "plain text" of the statute could not be read to support such a construction); *Domingue v. Ford Motor Co.*, 314 Ga. 59, 67 n.7 (2022) (rejecting the appellant's argument "that we should deviate from a straightforward reading of the statutory

text because it produces 'absurd' results"); *McKinney v. Fuciarelli*, 298 Ga. 873, 875–78 (2016) (explaining that the statutory text at issue could be read to support only one meaning and that the Court of Appeals erred by construing the statute differently on the basis that the construction supported by the plain text would be "absurd").

In sum, the Court of Appeals erred by affirming the dismissal of Warner's complaint on the basis that "extending the Georgia RICO Act" to a "domestic dispute would lead to unreasonable or absurd consequences not contemplated by the legislature[,] in defiance of common sense and sound reasoning." *Warner*, 375 Ga. App. at 814.[10] We therefore vacate the Court of Appeals's opinion and remand this case to that court for it to consider whether, in light of the parties' remaining arguments, the complaint states a claim under OCGA § 9-11-12(b)(6) and whether the trial court erred in concluding that it did not.

*Judgment vacated and case remanded. All the Justices concur.*

---

[10] Whether the General Assembly *intended* the text of the Act to extend as far as it actually does—that is, to a case where the underlying subject matter is payment of child support—is a question for the legislative branch of government, not the judicial branch.